# NO. 12-21-00145-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *AJA HOLMAN,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## MEMORANDUM OPINION

Aja Holman filed this original proceeding seeking a writ of mandamus instructing Respondent to vacate an order compelling discovery and awarding $2,500 in attorney's fees.[1] We conditionally grant the writ, in part.

## BACKGROUND

On October 7, 2019, Real Party in Interest, Hibbs-Hallmark & Company (HHC), obtained a judgment against Gregory D. Holman d/b/a DNA Auto Trucking.[2] Aja is Gregory's wife. On July 29, 2021, HHC served Aja with a civil subpoena to appear for a deposition and a subpoena duces tecum. Aja filed a motion to quash and for protective order. HHC filed a motion to compel. Respondent signed an order on August 16, in which he granted the motion to compel, denied Aja's motion to quash, ordered that Aja appear for a deposition on August 30 and produce all documents responsive to the subpoena duces tecum, and ordered that Aja pay $2,500 in attorney's fees to HHC's counsel no later than noon on August 27. Aja filed this proceeding on August 26, along with a motion for emergency relief. This Court granted a stay of the August 16 order.

---

[1] Respondent is the Honorable Taylor Heaton, Judge of the County Court at Law No. 2 in Smith County, Texas.

[2] Gregory appealed, but this Court dismissed the appeal for want of jurisdiction. *See **Holman v. Hibbs-Hallmark & Co.**,* No. 12-19-00370-CV, 2019 WL 6522194 (Tex. App.—Tyler Dec. 4, 2019, no pet.) (mem. op.) (per curiam).

Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal. *See **In re Daisy Mfg. Co.***, 17 S.W.3d 654, 658 (Tex. 2000) (orig. proceeding) (per curiam). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. ***Walker v. Packer***, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). A trial court has no discretion in determining what the law is or in applying the law to the facts. *Id*. at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus. *Id*. The relator has the burden to establish the prerequisites to mandamus. ***In re Fitzgerald***, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding). Mandamus is the proper vehicle for challenging post-judgment discovery orders.[3] *See **Sintim v. Larson***, 489 S.W.3d 551, 556 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also **In re Seavall***, No. 03-13-00205-CV, 2013 WL 3013872, at *1 (Tex. App.—Austin June 11, 2013, orig. proceeding) (mem. op.); ***In re Motor Car Classics, LLC***, No. 06-10-00051-CV, 2010 WL 2784437, at *2 (Tex. App.—Texarkana July 15, 2010, orig. proceeding) (mem. op.).

**DISCOVERY ORDER**

We must determine whether Respondent abused his discretion by compelling Aja to respond to HHC's discovery requests.

**Postjudgment Discovery**

At any time after rendition of judgment, so long as said judgment has not been suspended by a supersedeas bond, suspended by order of a proper court, or become dormant, the successful party may, for the purpose of obtaining information to aid in the enforcement of said judgment, initiate and maintain in the trial court in the same suit in which judgment was rendered any discovery proceeding authorized by these rules for pre-trial matters. TEX. R. CIV. P. 621a. The rules governing and related to such pre-trial discovery proceedings shall apply in like manner to discovery proceedings after judgment. *Id*. Judicial supervision of such discovery proceedings

---

[3] Generally, such an order shall be subject to review on appeal from the final judgment. TEX. R. CIV. P. 215.1(d). But as previously stated, this proceeding involves postjudgment discovery.

after judgment shall be the same as that provided by law or these rules for pre-trial discovery and proceedings insofar as applicable. *Id*.

A party may compel discovery from a nonparty, i.e., a person who is not a party or subject to a party's control, only by obtaining a court order under Texas Rules of Civil Procedure 196.7, 202, or 204, or by serving a subpoena compelling: (a) an oral deposition; (b) a deposition on written questions; (c) a request for production of documents or tangible things, pursuant to Rule 199.2(b)(5) or Rule 200.1(b), served with a notice of deposition on oral examination or written questions; and (d) a request for production of documents and tangible things under this rule. TEX. R. CIV. P. 205.1. Upon reasonable notice to other parties and all other persons affected thereby, a party may apply for sanctions or an order compelling discovery. TEX. R. CIV. P. 215.1. If the motion is granted, the court shall, after opportunity for hearing, require a party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay, at such time as ordered by the court, the moving party the reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust. *Id*. 215.1(d).

**Scope of Discovery**

The scope of discovery largely rests within the discretion of the trial court. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam). In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, provided the discovery is "reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a). Relevant evidence is that which has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. TEX. R. EVID. 401. Relevance in the context of postjudgment discovery is viewed generally in the same manner as in ordinary pretrial discovery, which includes anything reasonably calculated to lead to the discovery of material evidence. *Blankenship v. Brown*, 399 S.W.3d 303, 312 (Tex. App.— Dallas 2013 pet. denied). Material evidence includes any information that would aid in enforcement of the judgment. *Id*.

3

A discovery request is overbroad when it encompasses time periods, activities, or products that are not relevant to the case in which the discovery is sought. *See In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 226 (Tex. 2016) (orig. proceeding) (per curiam). A discovery order that compels overly broad discovery is an abuse of discretion. *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding) (per curiam). Discovery requests must be reasonably tailored to include only matters relevant to the case. *See CSX Corp.*, 124 S.W.3d at 152. It is not the burden of the responding party to tailor a reasonable discovery request for the requesting party. *In re Houstonian Campus, L.L.C.*, 312 S.W.3d 178, 181 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding). Rather, the requesting party has the responsibility to narrowly tailor its requests for production. *Id.* at 182. "A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *CSX Corp.*, 124 S.W.3d at 153.

**Unclean Hands**

We first address HHC's contention that mandamus should be denied because Aja has "unclean hands." Although mandamus is a legal remedy, it is governed by equitable principles, so "the doctrine of unclean hands has been used to deny issuance of the writ." *See Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 552 n.2 (Tex. 1990) (noting use of doctrine but refusing to apply it). Whether to apply the doctrine or not is committed to a court's discretion. *See Thomas v. McNair*, 882 S.W.2d 870, 880 (Tex. App.—Corpus Christi 1994, no writ). The doctrine will be applied only to "one whose own conduct in connection with the same matter or transaction has been unconscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equity and righteous dealing." *Id.* In addition, the complaining party must show an injury to himself arising from the conduct. *Id.* "The clean hands maxim should not be applied when the [opposing parties] have not been seriously harmed and the wrong complained of can be corrected without applying the doctrine." *Id.*

HHC contends that Aja's motions are "merely the latest chapter in an ongoing pattern of blatant misrepresentations, obstruction and profanity laced communications which have been exhibited both [by Gregory] and Aja." According to HHC's statement of facts, Gregory refused to respond to post-judgment discovery, refused to comply with an order compelling him to answer and produce all responsive documents, failed to comply with a contempt and

4

commitment order, resulting in a warrant for his arrest, and provided documents that were not responsive to the applicable request. HHC states that its counsel and counsel's staff, as well as court officers serving documents, "have been subjected to a continuing string of obscenities, slurs, insults and complete disregard for the Orders of the trial court." Aja responds that because she is not a party to the underlying case, there is no "ongoing pattern" as to her and her use of profanity cannot result in the type of harm contemplated by the unclean hands doctrine.

HHC cites no authority for its contention that the facts of this case warrant denial of Aja's petition for writ of mandamus. *See **In re UV Logistics, LLC***, No. 12-20-00196-CV, 2021 WL 306205, at *4 (Tex. App.—Tyler Jan. 2, 2021, orig. proceeding) (mem. op.) (real party in interest cited no authority for contention that particular facts warranted denial of mandamus petition); *see also **In re Cisneros***, No. 13-20-00094-CV, 2020 WL 1856471, at *7 (Tex. App.—Corpus Christi Apr. 7, 2020, orig. proceeding) (mem. op.) (same); ***In re Empire Pipeline Corp***., 323 S.W.3d 308, 315 (Tex. App.—Dallas 2010, orig. proceeding) (same). Thus, we are not persuaded that the doctrine of "unclean hands" should bar Aja from petitioning this Court to issue a writ of mandamus to correct any abuse of discretion with respect to the August 16 discovery order. *See **UV Logistics,*** 2021 WL 306205, at *4 (declining to apply unclean hands doctrine); *see also **Cisneros***, 2020 WL 1856471, at *7; ***Empire Pipeline Corp***., 323 S.W.3d at 315.

**Lack of Hearing**

Smith County Local Rule 2.3 provides, in pertinent part, as follows:

> Motions shall state a date of submission at which time the Motion will be considered without a hearing, unless both a request for oral argument and a response are filed. The movant shall select the date of submission which shall be no sooner than the Monday following fifteen (15) days from date of filing, except on leave of Court. The motion will be submitted to the Court for ruling on that date or later.

Smith (Tex.) Dist. Ct. and County Ct. at Law R. 2.3. Under Rule 2.7, a "motion or response shall include a request for oral argument, if desired, in the requesting party's motion or response." *Id*. R. 2.7.

Aja filed her motion to quash on Monday, August 2 and HHC filed its motion to compel, in which it requested attorney's fees, on Thursday, August 5. Aja argues that Respondent failed to comply with Rule 2.3 in that he could have ruled "based upon the written submission in the absence of any request for oral hearing on Relator's Motion to Quash and for Protective order *on*

*or after* Monday, August 23, 2021," but the order denying the motion to quash and granting the motion to compel was signed on August 16. Accordingly, Aja complains that she was not given the chance to offer evidence against production or to put HHC to its burden of proving relevance and materiality, and was effectively denied "an opportunity to reply, request an oral hearing, or submit additional evidence for the court's consideration."

But Aja's motion to quash did not include a request for an oral hearing as provided by local Rule 2.7 or as provided by Texas Rule of Civil Procedure 193.4(a). *See* TEX. R. CIV. P. 193.4(a) ("[a]ny party may at any reasonable time request a hearing on an objection or claim of privilege asserted under this rule"). Nor did her motion select a date of submission in accordance with local Rule 2.3. "Due to the extraordinary nature of the remedy, the right to mandamus relief generally requires a predicate request for action by the respondent, and the respondent's erroneous refusal to act." *In re Coppola*, 535 S.W.3d 506, 510 (Tex. 2017) (orig. proceeding) (per curiam); *In re Perritt*, 992 S.W.2d 444, 446 (Tex. 1999) (orig. proceeding) (per curiam); *In re Jarvis*, 431 S.W.3d 129, 139 (Tex. App.—Houston [14th Dist.] 2013, orig. proceeding). And the record is silent as to whether such a request would have been futile and refusal little more than a formality. *See Perritt*, 992 S.W.2d at 446; *Jarvis*, 431 S.W.3d at 139. HHC's motion to compel likewise did not select a submission date or request an oral hearing. Respondent did not rule until August 16, eleven days after HHC filed its motion. Aja could have filed a response to the motion and requested an oral hearing, but she did not. She likewise could have filed a motion to reconsider to allow Respondent to correct any error in the failure to hold an oral hearing. But the record does not indicate that she did so. "Mandamus relief is not available until the trial court is afforded the opportunity to correct the alleged mistake or error." *In re Waste Mgmt. of Tex., Inc.*, 392 S.W.3d 861, 877 (Tex. App.—Texarkana 2013, orig. proceeding).

Moreover, when, as here, the trial court grants a motion to compel, Rule 215.1 requires the "opportunity for hearing" before the court may order the nonmovant to pay reasonable expenses to the movant, including attorney's fees. TEX. R. CIV. P. 215.1(d). But the Texas Supreme Court has explained that "[a] 'hearing' does not necessarily contemplate a personal appearance before the court or an oral presentation to the court." *Cire v. Cummings*, 134 S.W.3d 835, 844 (Tex. 2004). In construing similar language in Rule 215.3 regarding sanctions, the Court explained that "nothing in the rule indicates that this must be an 'oral hearing.'" *Id.*;

6

TEX. R. CIV. P. 215.3 (if court finds party is abusing discovery process, court may, *after notice and hearing*, impose any appropriate sanction authorized by certain paragraphs of Rule 215.2(b)). Rather, whether to hold an oral hearing on a motion to compel is a matter within the trial court's discretion. *Cire*, 134 S.W.3d at 843. Either party may request an oral hearing, but there is no "oral hearing" requirement in the rules. *Id*. Thus, under the rules of civil procedure, Aja was not entitled to an oral hearing.

**Tax Returns**

HHC's request number four sought Aja's federal tax returns, individual or joint, for the tax years of 2018 to the present. Request number five sought tax returns for any Holman entity or entities for the tax years 2018 to the present. The request defined "Holman entity or entities" as (1) any proprietorship, partnership, joint venture, limited liability corporation, corporation or other business entity in which Aja has, or at any time during the relevant time period has had an interest, including but not limited to any community property interest, or been an officer, director, partner, member, or shareholder, and (2) any entity or entities with which Gregory is or has been an independent contractor or employee at any time during the relevant time period. The relevant time period is defined as "January 1, 2018, to the present," 2021. Aja objected that these requests failed to describe the item or category to be produced with reasonable particularity, were overbroad in seeking documents for more than the current or past year, sought information not relevant or reasonably calculated to lead to the discovery of admissible evidence, were unreasonably frivolous, oppressive, or harassing, and invaded personal, constitutional, or property rights. She further stated that the relevant information sought had already been produced by Gregory. Aja also objected that request number five was vague and unclear.

"Tax returns are treated differently than other types of financial records, as evidenced by the supreme court's expressed 'reluctance to allow uncontrolled and unnecessary discovery of federal income tax returns.'" *In re Beeson*, 378 S.W.3d 8, 12 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding) (quoting *Hall v. Lawlis*, 907 S.W.2d 493, 494–95 (Tex. 1995)). "This is because federal income tax returns are considered private and the protection of that privacy is of constitutional importance." *Id*. Sacrificing such privacy "should be 'kept to the minimum, and this requires scrupulous limitation of discovery to information furthering justice between the parties which, in turn, can only be information of relevancy and materiality to the matters in controversy.'" *Id*. (quoting *Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex. 1962)).

7

Consequently, when a resisting party objects to the production of tax returns, the burden shifts to the party seeking to obtain the documents to show that the returns are relevant and material to the issues in the case. *Id*. "Tax returns are not material if the requesting party can obtain the same information from another source." *Id*.

Once Aja objected to production of the tax returns, HHC bore the burden of showing that the returns are relevant and not available through other, less-intrusive means.[4] *See id*. In response to Aja's motion to quash and for protective order, HHC argued the following pertinent to relevancy:

> The documents requested are well within the scope of legitimate discovery. Movant, Aja Holman, testified during the May 10, 2021 Contempt Hearing that she was the wife of [Gregory], that she was the person responsible for keeping the records, that she was, as one of the managing members of DNA Auto Trucking, responsible for preparation of [Gregory's]1099's since [Gregory] was an independent contractor … [Gregory] and [Aja] have a number of entities with which they play their shell games. For example, [Aja] referenced Holman Logistics in the course of her testimony on May 10, 2021. Holman Logistics, according to the filings with the Texas Secretary of State, … was formed by [Gregory] and [Aja] shortly after the Summary Judgment in this cause. Both [Gregory] and Movant, Aja Holman, are identified as managers of such entity.
>
> …
>
> …this Court's Judgment arises out of the application for and binding of coverage, pursuant to the express request of [Gregory] and [Aja]. The subsequent non-payment for that insurance coverage while it was in effect was the basis for the Judgment in this cause….Movant, Aja Holman, was directly involved in instructing HHC to bind that coverage. [Gregory] and [Aja] provided HHC with a voided check for an account in the name of Gregory D. Holman d/b/a DNA Auto with Bank of America. When the attempted ACH transfer of the required funds bounced due to insufficient funds, Movant, Aja Holman, claimed that there were errors on the part of the bank and requested HHC to resubmit it to the bank. It bounced once again. The ultimate result was the Judgment in this cause for the premiums due while the coverage was in force. Accordingly, there is significant evidence that both [Gregory] and Movant, Aja Holman, are involved in the management of their community assets….
>
> …
>
> It is important to note that the voided check . . . provided to HHC by Movant, Aja Holman, and [Gregory]. It is for a Bank of America account….
>
> …
>
> Pursuant to the provisions of Secs. 3.201 and 3.202 of the Texas Family Code, the Holmans' community property is liable for the debts of both spouses incurred during the marriage. Discovery with regard to the management of such properties and assets, accounts which may have existed, entities which may have been formed or existed to hide such assets, the transfer of funds

---

[4] *See **In re Beeson***, 378 S.W.3d 8, 13 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding) ("issues of relevance and materiality were implicitly subsumed within Beeson's objection that the production of his federal tax returns would violate his constitutional right to privacy").

> from entity to entity or account to account in order to avoid creditors, such as HHC, Movant's knowledge of such activities as the self-described person most knowledgeable and the identification and production of documents for such accounts, entities and transactions are all proper and legitimate subjects of discovery. Such evidence and the records relating thereto are reasonably calculated to lead to the discovery of admissible evidence.

HHC further complained that none of the documents delivered to HHC by Gregory were responsive to the documents that should have been produced pursuant to a judgment for contempt against Gregory; specifically, the documents produced did not comport with the relevant time period. Additionally, HHC argued that Aja falsely stated that responsive documents were produced.

Assuming that the tax returns are relevant, HHC failed to demonstrate that the returns are material, i.e., not available through other channels. For instance, HHC does not explain why it could not obtain the information it seeks from Aja by first taking an oral deposition or a deposition on written questions, without production of the tax returns. *See* TEX. R. CIV. P. 205.1; *see also **In re Sullivan***, 214 S.W.3d 622, 625 (Tex. App.—Austin 2006, orig. proceeding) (State not entitled to production of tax returns where it "did not attempt to use (or explain why it could not use) interrogatories, depositions, or any other discovery device to follow-up its initial discovery request or further explore the bases for Sullivan's calculations"). Nor does HHC explain why other financial documents would be insufficient sources of the information it seeks. *See **In re Long,*** No. 06-20-00039-CV, 2020 WL 5028779, at *6 (Tex. App.—Texarkana Aug. 25, 2020, orig. proceeding) (mem. op.) (party seeking tax returns failed to explain whether "backup documentation ordered could reveal information sought from the tax returns" or why she could not use interrogatories, depositions, or other discovery device to obtain information). HHC complains that Aja's motion to quash and for protective order "continues an ongoing pattern [of] misrepresentations, obstructions and profanity laced communications," including a "continuing string of obscenities, slurs, insults and complete disregard" for trial court orders. But "[m]ateriality is not shown by merely expressing frustration with the produced discovery … or distrust of the other party." ***In re 7677 Real Street, LLC***, No. 01-16-00683-CV, 2017 WL 4366033, at *7 (Tex. App.—Houston [1st Dist.] Oct. 3, 2017, orig. proceeding) (mem. op.) (citing ***Beeson***, 378 S.W.3d at 15); *see e.g. **Long***, 2020 WL 5028779, at *6 (conclusory argument that case was predicated on deceitful business practices, and Spradlin could not trust, based on Long's word, that tax returns did not contain information responsive to request, thus,

9

information could not be obtained from another source, failed to explain why Spradlin could not use other discovery devices to obtain information). Because HHC failed to demonstrate materiality, Respondent abused his discretion by compelling production of the requested tax returns.[5]

**Other Financial Documents**

HHC requested the following documents:

1. account statements for any checking account, savings account, or other account or fund of money in which Aja has had any interest, including but not limited to any community property interest, or right of withdrawal or deposit at any time during the relevant time period.

2. account statements for any checking account, savings account, or other account or fund of money in which Gregory has had any interest, including but not limited to any community property interest, or right of withdrawal or deposit at any time during the relevant time period.

3. account statements for any checking account, savings account, or other account or fund of money in which any Holman entity or entities have had any interest, including but not limited to any entity or entities in which either Aja or Gregory had any community property interest or right of withdrawal or deposit at any time during the relevant time period.

…

6. supporting documents used or relied upon in the preparation or in support of any of Aja's tax returns, individual or joint, for the years 2018 to the present.

7. supporting documents used or relied upon in the preparation or support of any Holman entity or entities tax returns for the years 2018 to the present.[6]

Aja objected to each request as follows:

The discovery request asks for information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence. Movant is not a defendant in this cause, nor does she

---

[5] Even had HHC demonstrated that the tax returns are both relevant and material, Respondent must review the returns to determine if they are relevant and material and, if so, redact any irrelevant or immaterial portions. *See In re 7677 Real Street, LLC*, No. 01-16-00683-CV, 2017 WL 4366033, at *8 (Tex. App.—Houston [1st Dist.] Oct. 3, 2017, orig. proceeding) (mem. op.). "'Subjecting federal income tax returns of our citizens to discovery is sustainable only because the pursuit of justice between litigants outweighs protection of their privacy.'" *Id*. (quoting *Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex.1962)). Thus, a trial court is required to segregate the relevant and material portions of the returns from the portions that are not. *Id*.

[6] HHC submitted thirteen requests, but in her motion to quash, Aja stated that after a diligent search, no documents were identified that are responsive to requests eight through thirteen. Thus, we need not address those requests. *See* TEX. R. APP. P. 47.1; *see also* TEX. R. CIV. P. 192.3(b) ("A person is required to produce a document or tangible thing that is within the person's possession, custody, or control"); *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 942 (Tex. 1998) (orig. proceeding) (per curiam) ("A document that does not exist is not within a party's 'possession, custody or control'"); *In re Preventative Pest Control Houston, LLC*, 580 S.W.3d 455, 460 (Tex. App.—Houston [14th Dist.] 2019, orig. proceeding) (parties cannot be forced to create documents that do not exist for the sole purpose of complying with a production request).

have a judgment against her. Except as provided by this subchapter, community property is not subject to a liability that arises from an act of a spouse. *Tex. Fam. Code* § 3.201. Movant is not personally liable for any debt owed Plaintiff, and unless both spouses are personally liable as provided by this subchapter, the community property subject to a spouse's sole management, control, and disposition is not subject to any nontortious liabilities that the other spouse incurs during marriage. *Tex. Fam. Code* § 3.202. Further, since the purported purpose of the subpoena is to discover assets of Judgment Defendant, subject to execution or garnishment, what possible relevance could a bank statement prior to a current bank statement have, especially going back to 2018.  [As to request number seven only, Aja added, "Further, it is clear that the assets of corporations, partnerships, and limited [sic] are not liable for the debts or tortious liabilities of shareholders or partners.]

The request fails to describe the item or category to be produced with reasonable particularity and is over broad in that it asks for more than documents for the current or past year.

The discovery request is unreasonably frivolous, oppressive, or harassing insofar as it requests documents related to her sole management, control, and disposition property, rather than restricting the request to documents regarding community property not within her sole management, control, and disposition.

The discovery request is an invasion of personal, constitutional, or property rights. Even though Movant is not a party, a defendant, nor personally liable for any debt to Plaintiff, Plaintiff seeks personal and financial information which is not Plaintiff's business.

She further objected that she could not comply with requests two, three, and seven because the requests are vague and unclear, and she could not determine with reasonable specificity the information requested.  Additionally, she stated that Gregory provided the relevant information sought by requests two and six.[7]

### *Separate and Community Property*

Aja contends that she is not a party to the case or judgment, she is not personally liable for Gregory's debt, community property is not subject to a liability that arises from a spouse's act, and her sole-management community property is not subject to any nontortious liabilities that Gregory incurred during marriage.  She maintains that financial documents detailing her separate property or community property assets she owns or manages are not relevant to assets subject to attachment by a judgment creditor of Gregory Holman dba DNA Auto Trucking.

Under the family code's rules of marital property liability pertinent to this case, one "spouse's separate property is not subject to liabilities of the other spouse unless both spouses

---

[7] Despite Aja's numerous objections, we limit our mandamus review to the arguments before us.  *See* TEX. R. APP. P. 38.1(i) (brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and record).

11

are liable by other rules of law." TEX. FAM. CODE ANN. § 3.202(a) (West Supp. 2020).[8]   And unless both spouses are personally liable, "the community property subject to a spouse's sole management, control, and disposition is not subject to: (1) any liabilities that the other spouse incurred before marriage; or (2) any nontortious liabilities that the other spouse incurs during marriage." *Id*. § 3.202(b); § 3.102(a) (West 2006) (during marriage, each spouse has the sole management, control, and disposition of the community property that the spouse would have owned if single, including: (1) personal earnings; (2) revenue from separate property; (3) recoveries for personal injuries; and (4) the increase and mutations of, and the revenue from, all property subject to the spouse's sole management, control, and disposition).   But the "community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by the spouse before or during marriage." *Id*. § 3.202(c).

HHC's subpoena defined "community property interest" as "any community property interest between [Aja] and Defendant, Gregory D. Holman."   Moreover, HHC's motion to compel indicates that it seeks to discover documents regarding community property assets, and HHC consistently argues that the Holmans' community property is subject to Gregory's debt. "Section 3.202(c) makes the entirety of the joint management community property subject to the liabilities of a debtor spouse." ***Drake Interiors, LLC v. Thomas,*** 433 S.W.3d 841, 849 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("Andrea did not need to be named in the earlier lawsuit or judgment for Drake to reach community assets jointly managed by her and Rob"). Accordingly, the Holmans' joint community property is subject to Gregory's debt and HHC is entitled to discovery of those documents.   *See* TEX. FAM. CODE ANN. § 3.202(c).   But requests one, two, three, six, and seven are written in such a way as to encompass documents pertinent

---

[8] The family code also contains rules for spousal liability. *See* TEX. FAM. CODE ANN. § 3.201 (West 2006). Sections 3.201 and 3.202 "relate to two distinct liability concepts." ***Providian Nat'l Bank v. Ebarb***, 180 S.W.3d 898, 902 (Tex. App.—Beaumont 2005, no pet.). "Section 3.201 governs a spouse's personal liability for the acts of his or her spouse, and section 3.202 sets out rules of marital property liability." *Id*.   In its motion to compel, HHC stated, "Pursuant to the provisions of Secs. 3.201 and 3.202 of the Texas Family Code, the Holmans' community property is liable for the debts of both spouses incurred during the marriage."   Despite HHC's citations to both sections, the record and HHC's mandamus responses demonstrate that HHC seeks to take community property to satisfy its judgment against Gregory.   Accordingly, we apply the rules of Sections 3.202 pertinent to marital property liability.   *See* ***U.S. v. Loftis***, No. 3:06-CV-1633-P, 2008 WL 282313, at *2 (N.D. Tex. Feb. 1, 2008) ("Section 3.202 of the Texas Family Code sets forth the type of property that may be subject to the liabilities of a debtor ('debtor') and the spouse of the debtor ('spouse')").

not only to the Holmans' joint community property but also Aja's separate property and sole-management community property.[9]

Nevertheless, "[p]roperty possessed by either spouse during or on dissolution of marriage is presumed to be community property." TEX. FAM. CODE ANN. § 3.003(a) (West 2006). It is Aja's burden to identify and prove that certain property cannot not be reached to satisfy Gregory's debt because it is her separate property or it is under her sole management, control, and disposition. *See* ***Pearson v. Fillingham***, 332 S.W.3d 361, 364 (Tex. 2011) ("All property acquired during a marriage is presumed to be community property, and the burden is placed on the party claiming separate property to prove otherwise"); ***Sink v. Sink***, 364 S.W.3d 340, 344 (Tex. App.—Dallas 2012, no pet.) (party who seeks to assert separate character of property must prove that character by clear and convincing evidence); ***In re D.T.***, No. 12-05-00420-CV, 2007 WL 4465250, at *5 (Tex. App.—Tyler Dec. 21, 2007, no pet.) (mem. op.) ("If it is Marcia's position that some of the community property was under her sole control and management and thus not liable for Robert's child support obligation, it was her burden to identify and prove that certain property could not be reached by the lien"). As the party resisting discovery, Aja was required to present any evidence necessary to support her objections. *See* ***In re CI Host, Inc.***, 92 S.W.3d 514, 516 (Tex. 2002) (orig. proceeding); *see also* ***United Fire Lloyds***, 578 S.W.3d at 580-81; TEX. R. CIV. P. 193.4(a). But Aja attached no evidence to her motion to quash and for protective order to show the requested documents are undiscoverable because they seek documents related to her separate or sole-management community property. She could have requested that Respondent conduct an *in camera* review of the documents required to be produced in order to determine their character and whether they are reasonably calculated to lead to the discovery of material evidence. *See* TEX. R. CIV. P. 193.4(a) (if court determines that *in camera* review of some or all requested discovery or required disclosure is necessary, that material or information must be segregated and produced to the court in a sealed wrapper within a reasonable time following the hearing). Absent supporting evidence, Respondent could not make an informed judgment on whether to limit discovery. *See* ***Indep. Insulating***

---

[9] Generally, the party making an objection or asserting a privilege must present any evidence necessary to support the objection or privilege. TEX. R. CIV. P. 193.4. Here, Aja attached no evidence to her motion to compel and for protective order. But when, as here, the discovery requests themselves demonstrate overbreadth as a matter of law, evidence is not necessary to support an objection. *See* ***In re Mem'l Hermann Healthcare Sys.***, 274 S.W.3d 195, 202 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding).

***Glass/Southwest, Inc. v. Street***, 722 S.W.2d 798, 802 (Tex. App.—Fort Worth 1987, writ denied w.o.j.).  Accordingly, we conclude that Aja failed to satisfy her burden of producing evidence to support her objections to requests one, two, three, six, and seven as they pertain to her separate and sole-management community property.

### *Pertinent Time Period*

HHC's requests sought documents from January 1, 2018 to the present.  Aja contends that documents from 2018, 2019, and 2020 have no relevance to current assets that are subject to execution or garnishment in 2021.  But one postjudgment remedy leads us to conclude otherwise.  The turnover statute gives a judgment creditor the right to seek "aid from a court of appropriate jurisdiction, including a justice court, through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, *including present or future rights to property*, that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities."  TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a) (West 2020) (emphasis added).  The term "including" is one "of enlargement and not of limitation or exclusive enumeration, and use of the term[] does not create a presumption that components not expressed are excluded."  TEX. GOV'T CODE ANN. § 311.005(13) (West 2013).  Accordingly, the turnover statute implies that the judgment debtor's past, present, and future rights to property are relevant to enforcement of a judgment.  Moreover, a reasonably tailored discovery request is not overbroad merely because it may include some information of doubtful relevance, as "'[p]arties must have some latitude in fashioning proper discovery requests.'"  ***In re Am. Optical. Corp.***, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam) (quoting ***Texaco, Inc. v. Sanderson***, 898 S.W.2d 813, 815 (Tex. 1995)).  We cannot conclude that January 1, 2018 to present constitutes an unreasonably long period of time.  *See* ***CSX Corp.***, 124 S.W.3d at 152 ("Discovery orders requiring document production from an unreasonably long time period or from distant and unrelated locales are impermissibly overbroad").

## **Protective Order**

A person from whom discovery is sought, and any other person affected by the discovery request, may move within the time permitted for response to the discovery request for an order protecting that person from the discovery sought.  TEX. R. CIV. P. 192.6(a).  To protect the movant from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights, the court may make any order in the interest of

justice. *Id*. 192.6(b). A party seeking a protective order must show particular, specific, and demonstrable injury by facts sufficient to justify a protective order. *In re Collins*, 286 S.W.3d 911, 919 (Tex. 2009) (orig. proceeding); *In re United Fire Lloyds*, 578 S.W.3d 572, 579 (Tex. App.—Tyler 2019, orig. proceeding); *Blankenship*, 399 S.W.3d at 312. Moreover, a party objecting or asserting a privilege must present any evidence necessary to support the objection or privilege. *CI Host, Inc.*, 92 S.W.3d at 516; *United Fire Lloyds*, 578 S.W.3d at 580-81; TEX. R. CIV. P. 193.4(a).

Having determined that Respondent abused his discretion by compelling responses to some of HHC's discovery requests, we conclude that, at most, Aja was entitled to an order limiting the requested discovery. Aja simply presented no evidence in her motion to quash and for protective order to establish particular, specific, and demonstrable injury by facts sufficient to justify a protective order barring the discovery in its entirety. *See Collins*, 286 S.W.3d at 919; *see also In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 181 (Tex. 1999) (orig. proceeding) ("party must produce some evidence supporting its request for a protective order").

### ATTORNEY'S FEES

Aja challenges Respondent's award of attorney's fees on grounds that there is insufficient evidence to support the award. She complains that Respondent awarded the $2,500 in fees without hearing any evidence to support the request and that the lack of evidence makes the award tantamount to a sanction. HHC responds that Respondent could take judicial notice of prior proceedings regarding evidentiary hearings and attorney's fees as to other motions to compel, Aja did not object to the attorney's fees request, and the fees are authorized by Rule 215.1(d). However, this Court has concluded that Respondent abused his discretion by granting the motion to compel without limitation. The August 16 order granted the motion to compel without individually addressing each of HHC's requests. Accordingly, the entire order must be vacated, which necessarily includes the award of attorney's fees.[10] *See In re Allstate Fire &*

---

[10] We acknowledge that generally attorney's fees awarded as the result of an order granting a motion to compel is subject to review on appeal from the final judgment. *See* TEX. R. CIV. P. 215.1(d). However, there has already been a final judgment in this case and again, mandamus review is available for postjudgment discovery orders. *See Sintim v. Larson*, 489 S.W.3d 551, 556 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also In re Seavall*, No. 03-13-00205-CV, 2013 WL 3013872, at *1 (Tex. App.—Austin June 11, 2013, orig. proceeding) (mem. op.); *In re Motor Car Classics, LLC*, No. 06-10-00051-CV, 2010 WL 2784437, at *2 (Tex. App.—Texarkana July 15, 2010, orig. proceeding) (mem. op.).

*Casualty Ins. Co.*, No. 12-17-00266-CV, 2017 WL 5167350, at *5 (Tex. App.—Tyler Nov. 8, 2017, orig. proceeding) (mem. op.) (conditionally granting writ and ordering trial court to vacate orders granting motion to compel and denying motion for reconsideration, including award of attorney's fees).

### DISPOSITION

Based upon our review of the record and the foregoing analysis, we conclude that Respondent abused his discretion by granting HHC's motion to compel in its entirety. Accordingly, we ***conditionally grant, in part*** Aja's petition for writ of mandamus. We direct Respondent to vacate his August 16, 2021, order compelling discovery, and in its stead, to issue an order setting forth the scope of discovery. We trust Respondent will promptly comply with this opinion and order. The writ will issue only if the trial court fails to do so ***within twenty days of the date of the opinion and order***. The trial court shall furnish this Court, within the time of compliance with this Court's opinion and order, a certified copy of the order evidencing such compliance. We ***lift*** our stay of August 26, 2021.

JAMES T. WORTHEN
Chief Justice

Opinion delivered November 10, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# ORDER

**NOVEMBER 10, 2021**

**NO. 12-21-00145-CV**

**AJA HOLMAN,**
Relator
V.

**HON. TAYLOR HEATON,**
Respondent

---

### ORIGINAL PROCEEDING

---

ON THIS DAY came to be heard the petition for writ of mandamus filed by Aja Holman; who is the relator in appellate cause number 12-21-00145-CV and a non-party postjudgment deponent in trial court cause number 70223-A, pending on the docket of the County Court at Law No 2 of Smith County, Texas. Said petition for writ of mandamus having been filed herein on August 26, 2021, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus be, and the same is, ***conditionally granted, in part***.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate his August 16, 2021, order compelling discovery, and in its stead, to issue an order limiting the scope of discovery; the writ will not issue unless the HONORABLE TAYLOR HEATON fails to comply with this Court order ***within twenty (20) days*** from the date of this order.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*